UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


**STEVEN ALEXANDER**
        Plaintiff

**v.**                                                           **No. 1:07CV-00133-J**

**MICHAEL ASTRUE**
        Commissioner of Social Security
        Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

        This matter is before the court upon the plaintiff's complaint seeking judicial review of the

final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by

Alvin Wax. The fact and law summaries of the plaintiff and the defendant are at Docket Entry

Nos. 13 and 16, respectively. This matter has been referred to the undersigned magistrate judge for

report and recommendation pursuant to 28 U.S.C. § 636.

        The final decision of the Commissioner was rendered on July 21, 2006, by

administrative law judge (ALJ) Gregory Wilson. In support of his decision denying Title II and

Title XVI benefits, Judge Wilson entered the following numbered findings:

        1. The claimant meets the insured status requirements of the Social Security Act through
December 31, 2007.

        2. The claimant has [not] engaged in substantial gainful activity since November 12, 2002,
the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

        3. The claimant has the following severe impairments: degenerative joint disease of the right
shoulder, degenerative joint disease of the left shoulder, and degenerative disc disease
(20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work activity. Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 10 pounds frequently with his left upper extremity; lift and carry up to 20 pounds occasionally and 10 pounds frequently with his right upper extremity; and stand, walk, and sit for 6 hours in an 8-hour day. However, the claimant is limited to no more than occasional pushing/pulling with his right upper extremity, climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and reaching overhead with his right upper extremity.  Additionally, the claimant can no more than frequently push/pull with his right upper extremity, must never climb ladders, scaffolds, or ropes; must avoid work requiring exposure to vibration; and must never perform work requiring exposure to hazards due to his medications (and possible side effects) and pain.  Such a residual functional capacity is well supported by the weight of the evidence of record.

6.  As a result of his residual functional capacity as described above, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was 51 years old on the alleged onset date of disability.  This is defined in the regulations as an individual closely approaching advanced age.  However, the undersigned finds that as of May 23, 2006, the claimant should be considered to be an individual of advanced age as he was within 2 months of his 55th birthday (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Prior to May 23, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Beginning on May 23, 2006, the claimant has not been able to transfer any job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Prior to May 23, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  Beginning on May 23, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.  The claimant was not disabled prior to May 23, 2006, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 20-27).

### Governing Legal Standards

1.  The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision.  42 U.S.C. § 405(g), sentence four.  In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision.  *Richardson v. Perales*, 402 U.S. 389 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981).  It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict."  *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight.  *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the

4

so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R.  §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a _prima facie_ showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. _Born v. Secretary_, 923 F.2d 1168 (6th Cir., 1990).  If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with _all_ the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule.  Section 200.00(a) of Appendix 2; 20 C.F.R.  §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2;   20   C.F.R. §§ 404.1569a(d) and 416.969a(d);

5

*Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986).   Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant.  *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Discussion

The plaintiff worked for many years as a carpenter.  In 2001, he suffered a work-related tear to his left shoulder rotator cuff.  In March of 2002, following failed conservative measures, he underwent surgical repair and eventually received a worker's compensation settlement.  In November of 2002, after returning to work, he tore his right rotator cuff while driving wooden stakes with a sledgehammer.  In December of 2002, he underwent surgical repair with debridement and subacromial decompression.  During physical therapy, he retore the right rotator cuff and in May of 2003, again underwent surgical repair with subacromial decompression and removal of a foreign body.  The plaintiff complains of unrelenting shoulder pain, especially on the right side, intermittent numbness, decreased grip strength, dropping objects, difficulty bathing, combing his hair, shaving, etc. (AR, pp. 78 and 157).  He takes Methadone and Lortab to ease his pain.

This case involves a closed period of disability beginning on November 12, 2002, when the plaintiff alleges he became disabled, until May 23, 2006, when the ALJ found that he achieved "advanced" age and became disabled pursuant to application of Rule 202.06 of Appendix 2 of the regulations (the so-called medical-vocational guidelines, or grids).  Grid Rule 202.06 contemplates, among other things, an individual who is has a maximum exertional capacity for "light" work and is of "advanced" age.   The corresponding Grid Rule for a person who is "closely approaching advanced" age (i.e., Grid Rule 202.14), which was the plaintiff's age category prior to May 23, 2006, directs a finding of "not disabled."

6

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE).  The VE testified that an individual who is capable of performing a limited range of "light" work as defined in ALJ's Finding No. 5 would retain the ability to perform a significant number of jobs in the national economy (AR, pp. 229-230).

The issue in this case is whether substantial evidence supports a conclusion that the plaintiff's bilateral shoulder condition is compatible with the ALJ's residual functional capacity (RFC) Finding No. 5 for a limited range of "light" work.  More specifically, the issue is whether substantial evidence supports a finding that a right-hand dominant individual, such as the plaintiff, who suffers from the residual effects of rotator cuff repair surgeries on the right and left shoulders, end-stage bilateral shoulder degenerative disease, rotator cuff abrasions, diminished grip strength, observable muscle wasting and limited range of shoulder motion upon clinical examination, and possible carpal tunnel syndrome on the right (AR, pp. 148 and 157-158) retains the capacity to "lift and carry up to 50 pounds occasionally and 10 pounds frequently with his left upper extremity [and] lift and carry up to 20 pounds occasionally and 10 pounds frequently with his right upper extremity" (Finding No. 5).  In Social Security disability law, "occasional" is a term of art meaning occurring up to one-third of an eight-hour workday.  Social Security Ruling (SSR) 96-9p.  "Frequent" means occurring between one-third and two-thirds of the workday.  Id.  For the reasons set forth below, the magistrate judge shall conclude that substantial evidence does not support the ALJ's finding and that the evidence adequately establishes the plaintiff's entitlement to benefits.

The plaintiff's primary contention upon judicial review is that the ALJ erred in declining to defer to the opinion of his treating physician, Lawrence Peters.  On March 25, 2005, Dr. Peters completed the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.

7

Dr. Peters found that the plaintiff's ability to stand, walk, and sit are unaffected by his bilateral shoulder impairment. However, he opined that the plaintiff is able to lift/carry only "less than 10 pounds" occasionally and is limited in his ability to push/pull with the upper extremities due to "severe endstage bilateral shoulder degenerative disease and rotator cuff abrasions. No cure available. Poorly responsive to medication" (AR, pp. 147-148). Dr. Peters left the portion of the form blank that asked him to quantify the plaintiff's capacity to "frequently" lift/carry (AR, p. 147). However, because he had already found that the plaintiff can "occasionally" lift/carry "less than 10 pounds," the most restrictive category available on the form, by implication, Dr. Peters was of the opinion that the plaintiff was incapable of lifting 10 pounds frequently.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The magistrate judge concludes that, under this standard, Dr. Peters' opinion was entitled to controlling weight. In plain language, there is simply no substantial reason to doubt the opinion of a treating physician that a right-hand dominant patient with a bilateral degenerative shoulder condition, residual effects of bilateral shoulder surgeries, diminished grip strength, muscle wasting, limited range of shoulder motion, and possible carpel tunnel syndrome on the right would lack the capacity to lift/carry objects weighing between 20 and 50 pounds up to one-third of an eight-hour workday and objects weighing 10 pounds two-thirds of the time. Therefore, the ALJ's decision is not supported by substantial evidence.

The Commissioner argues that substantial evidence supports the ALJ's RFC Finding No. 5 because the non-examining state agency physician found that the plaintiff retains the ability to occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds (AR, p. 139).   The magistrate judge concludes that the Commissioner's reliance upon these findings is unpersuasive for at least two reasons.   First, the ALJ himself appears to find the non-examining physician's findings to be insufficiently restrictive, to-wit (AR, p. 25):

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of "not disabled," albeit using a slightly different rationale.   Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, their opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

Second, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir., 1987).

The magistrate judge agrees with the Commissioner that the opinion of the treating chiropractor, Kevin Goben, D.C., is not entitled to controlling weight because chiropractors are not "acceptable medical sources" as contemplated by 20 C.F.R.   §§ 404.1513(a) and 416.913(a). However, discounting Dr. Goben's opinion does not provide a rationale for discounting Dr. Peters' opinion.

Having concluded that the Commissioner's final decision is not supported by substantial evidence, the remaining issue is whether "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits" as contemplated by *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir., 1994).   For the reasons set forth below, the magistrate judge shall conclude that the record does adequately support an award of benefits.

We have already concluded that Dr. Peters' finding that the plaintiff is able to lift/carry "less than 10 pounds" occasionally is entitled to controlling weight. We now conclude that this restriction is incompatible with the requirements of any type of work except perhaps "sedentary" work, which requires, among other things, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a) and 416.967(a). The appropriate Appendix 2 rules for a person who has a maximum exertional capacity for "sedentary" work and the plaintiff's age, i.e., "closely approaching advanced age" prior to May 23, 2006, and past relevant work experience are Grid Rules 201.12 and/or 201.14. Both rules direct an ultimate finding of "disabled." Therefore, acceptance of Dr. Peters' assessment requires a conclusion of disability during the closed period at issue in this case beginning on November 12, 2002, when the plaintiff alleges he became disabled, until May 23, 2006, when the ALJ found that he became disabled pursuant to application of Grid Rule 202.06.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II and/or Title XVI benefits based upon the plaintiff's application for Title XVI benefits filed on March 6, 2004, and his alleged onset of disability date of November 12, 2002.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).